## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JAMES L. SHEPHERD,
    Petitioner,

vs

WARDEN, PICKAWAY CORRECTIONAL
INSTITUTION,
    Respondent.

Case No. 1:10-cv-222

Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner, a prisoner in state custody at the Pickaway Correctional Institution in Orient,

Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In the

petition, petitioner challenges his conviction upon entry of a no contest plea in the Scioto County,

Ohio, Court of Common Pleas to a first-degree-felony charge of drug trafficking in the vicinity of

a school.  (Doc. 1).  This matter is now before the Court on the petition, respondent's return of

writ with exhibits, and petitioner's "traverse" in reply to the return of writ, as well as the

transcript of proceedings held in the state trial court on petitioner's motion to suppress evidence

obtained during the search of a residence.  (Docs. 1, 6, 9, 11).

## I. PROCEDURAL HISTORY

### State Trial Proceedings

On April 5, 2006, the Scioto County grand jury returned a five-count indictment charging

petitioner with a first-degree-felony count of crack-cocaine possession in violation of Ohio Rev.

Code § 2925.11(A) and § 2925.11(C)(4)(f) (Count 1); a first-degree-felony count of crack-

cocaine trafficking in the vicinity of a school in violation of Ohio Rev. Code § 2925.03(A)(2)

and § 2925.03(C)(4)(g) (Count 2); a fourth-degree-felony count of heroin possession in violation

of Ohio Rev. Code § 2925.11(A) and § 2925.11(C)(6)(b) (Count 3); a third-degree-felony count

of heroin trafficking in the vicinity of a school in violation of Ohio Rev. Code § 2925.03(A)(1)

and § 2925.03(C)(6)(c) (Count 4); and a count of possessing criminal tools in violation of Ohio

Rev. Code § 2923.24(A), (C) (Count 5). (Doc. 6, Ex. 1). The indictment also contained major

drug offender and forfeiture specifications. (Doc. 6, Ex. 1).

> The State filed a bill of particulars on June 14, 2006, which provided in pertinent part:

> On or about the 21st day of February, 2006, at approximately 11:47 p.m., at 1910
> Kinney[']s Lane, Portsmouth, Scioto County, Ohio, officers executed a search
> warrant at the above location. The search revealed 115 grams of crack cocaine in
> three baggies that were thrown on the floor in the bedroom at the top of the steps.
> Officers also found 15 individual packages of heroin[] in the cabinet in the
> kitchen along with 2 sets of digital scales with residue and a razor blade with
> residue.

(*See* Doc. 6, Ex. 3, p. 1). In its direct appeal decision, the Ohio Court of Appeals, Fourth

Appellate District, also made the following factual findings, which are presumed correct under

28 U.S.C. § 2254(e)(1),[1] about the investigation, as well as the issuance and execution of the

search warrant, leading to petitioner's arrest and indictment:

> On February 21, 2006, Portsmouth Police Department Officer Steven Timberlake
> learned that appellant was staying in the 1910 Kinney's Lane residence.
> Apparently, appellant is well known to the narcotics division and Officer
> Timberlake submitted an affidavit for a warrant to search the premises. Officer
> Timberlake's affidavit spanned eight pages and forty-two paragraphs detailed
> appellant's involvement in Portsmouth drug activity from 2000 to 2006. Of those
> forty-two paragraphs, three related to the current case:

> > "On 02-20-2006 Officers received a call on the drug hotline that

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence." Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct. *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

there was a lot of traffic in and out of 1910 Kinney's [L]ane and one of the subjects staying there is driving a silver car.

On 02-21-[20]06 Officers of the Portsmouth Police Department received information from a reliable confidential informant that James Shepherd was staying with a female known as 'Katie' at 1910 Kinney's Lane. The informant also stated that Shepherd is selling crack cocaine, powder cocaine, oxycontin and her[oi]n. The confidential informant advised that Shepherd drives a silver rental car and has [2] subjects from Gallipolis with him.

On the evening of 02-21-2006 Officers of the Portsmouth Police Department received information from a reliable confidential informant that advised they had just saw [sic] James Shepherd at 1910 Kinney's Lane and [he] had just returned from Columbus with approximately 8 ounces of crack cocaine."

A search warrant was issued and executed. When an officer knocked on the door, appellant peered outside, saw the police, and exclaimed, "I got to pee" and dashed upstairs. Police entered the residence, secured both appellant and Katie Lansing, and executed the search. Police found crack cocaine and heroin.

(Doc. 6, Ex. 18, p. 2).[2]

On June 15, 2006, petitioner's trial counsel filed a motion to suppress "all evidence seized as the result of the execution of the search warrant mentioned in the State's bill of particulars." (Doc. 6, Ex. 3). In the motion, counsel argued that the "evidence seized must be suppressed because the warrant was issued without probable cause," did not "adequately describe the persons to be searched and the items to be seized," and was unreasonably executed. (Doc. 6, Ex. 3). Counsel also contended that "if the search warrant was based on an affidavit containing information from informant(s), . . . disclosure of the identity of the informant(s) [was] necessary to preserve Defendant's rights under the Confrontation Clause." (Doc. 6, Ex. 3, p. 2).

---

[2]The undersigned has made corrections in the quoted passages from Officer Timberlake's affidavit to accord with the actual affidavit, which has been included in the record filed by respondent with the return of writ. (*See* Doc. 6, Ex. 15, Appendix, pp. A-13-A-20).

On June 16, 2006, the trial court held an evidentiary hearing on petitioner's motion, where Officer Timberlake was questioned about the affidavit he submitted in support of his request for a search warrant and about the execution of the search warrant issued in this case. (Doc. 11). After the hearing, the parties were allowed to file additional pleadings supporting their positions. (*See* Doc. 6, Exs. 5-7). Thereafter, on June 30, 2006, the trial court issued a Judgment Entry denying petitioner's suppression motion, as well as his request to compel the disclosure of the confidential informant's identity. (Doc. 6, Ex. 8).

In February 2007, petitioner entered a plea of no contest to the first-degree-felony trafficking offense charged in Count 2 of the indictment. (Doc. 6, Ex. 9). In a Judgment Entry filed February 26, 2007, the trial court accepted petitioner's no contest plea; found him guilty as charged in Count 2 of the indictment; dismissed the four other counts; and sentenced petitioner to an "agreed sentence" of ten (10) years in prison, which was to be served consecutively to a sentence imposed in another criminal case. (Doc. 6, Ex. 10).

### State Direct Appeal Proceedings

Petitioner filed a timely *pro se* notice of appeal to the Ohio Court of Appeals, Fourth Appellate District. (Doc. 6, Ex. 11). With the assistance of appointed counsel from the Ohio Public Defender's Office, petitioner filed an appellate brief, raising the following claim as the sole assignment of error:

> The trial court erred when it failed to suppress evidence obtained during an unlawful search of a residence when the search warrant was issued in the absence of probable cause. Fourth and Fourteenth Amendments, United States Constitution; Section 14, Article I, Ohio Constitution. (June 30, 2006 Judgment Entry).

4

(Doc. 6, Ex. 15).[3]  On September 26, 2008, the Ohio Court of Appeals issued a Decision and Judgment Entry overruling the assignment of error and affirming the trial court's judgment. (Doc. 6, Ex. 18).

Petitioner's appellate counsel timely appealed to the Ohio Supreme Court.  (Doc. 6, Ex. 19).  In the memorandum in support of jurisdiction filed by counsel, petitioner asserted essentially the same claim of error that had been presented to the Ohio Court of Appeals.  (Doc. 6, Ex. 20).  On March 19, 2009, the Ohio Supreme Court denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question."  (Doc. 6, Ex. 21).

### Application For Reconsideration And Reopening Of Appeal

Approximately eleven months later, on February 8, 2010, petitioner filed a *pro se* application for "reconsideration and reopening" of the direct appeal with the Ohio Court of Appeals, Fourth Appellate District.  (Doc. 6, Ex. 22).  In the application filed pursuant to Ohio R. App. P. 14(B) and Ohio R. App. P. 26, petitioner asserted the following claims:

> 1. Appellant is entitled to have his direct appeal reconsidered and reopened, and discharging him from any further unlawful imprisonment, on grounds that the appellant's 4th and 14th Amendment rights were violated.
>
> 2. Appellant is entitled to have his direct appeal reconsidered and reopened, on grounds that the defendant's Sixth and Fourteenth Amendment right to the effective assistance of counsel at trial, and on direct appeal, was violated, as a result of both attorney(s) failure to attack the search warrant on grounds of false statements.

---

[3]The Ohio Public Defender was appointed to represent petitioner after the attorney initially serving as appellate counsel failed to meet a filing deadline, which resulted in the dismissal of the appeal. (*See* Doc. 6, Exs. 12-14). The attorney filed a motion for reconsideration and requested more time to file the appellate brief, or in the alternative, her removal and appointment of substitute counsel to represent petitioner. (Doc. 6, Ex. 13). The Ohio Court of Appeals granted the motion for reconsideration, reinstated the appeal, removed the attorney as petitioner's counsel of record, and appointed the Ohio Public Defender to prosecute petitioner's appeal. (Doc. 6, Ex. 14).

3. Defendant is entitled to an order granting him a reconsideration and reopening, under Ohio Appellate Rule(s) 14(B), 26(A), and 26(B), on grounds that: (a) appellate counsel on direct appeal was ineffective; and (b) on grounds that court of appeals['] initial decision, that denied the appellant's direct appeal, on 4th and 14th [Amendment] grounds, [is] contrary to existing U.S. Supreme Court preceden[ts]; and thus, must be reconsidered under the holdings made by the United States Supreme Court.

4. Appellant is entitled to reconsideration and reopening under Ohio Appellate Court Rule 14(B), 26(A) and 26(B), on grounds that: (a) appellate counsel was ineffective, below an objective standard of reasonable representation, in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution, as a result of appellate counsel's failure to . . . raise [a claim] of ineffective assistance of trial counsel; and (b) where the defendant did not receive a full and fair suppression of evidence hearing.

(Doc. 6, Ex. 22).

On April 23, 2010, the Ohio Court of Appeals denied petitioner's application as untimely.

(Doc. 6, Ex. 23). The court reasoned:

We begin our analysis by noting that an application for reconsideration "shall" be filed no later than ten days after announcement of the appellate decision. App. R. 26(A). In the case sub judice, however, more than a year elapsed between [the direct appeal decision (*Shepherd I*)] and the filing of the instant application.

Generally, we need not consider a late App. R. 26(A) application, although we have discretion to do so if the application raises issues of sufficient importance.... Here, we find nothing in appellant's application to persuade us that such circumstances exist. His App. R. 26(A) application is therefore denied.

Insofar as the App. R. 26(B) application to reopen appeal is concerned, that application was required to be filed no later than ninety days after *Shepherd I* was journalized. [App. R.] 26(B)(1). The application may be considered out of rule, however, only if appellant can show "good cause for filing at a later time." *Id.* Appellant does not explain the delay to file the present application, nor is any explanation for the delay apparent from our review of his arguments.

The arguments appellant asserts in support of both his applications appear to be a re-visitation of the issues we addressed in *Shepherd I* with regard to the motion to suppress evidence. Appellant either posits new avenues of relief that he claims appellate counsel should have pursued to challenge the trial court's ruling, or

invites this Court to give renewed consideration to views expressed by the dissent. Suffice it to say, all of these arguments could have been, and should have been, raised in a timely manner.

(Doc. 6, Ex. 23).

Petitioner did not pursue an appeal to the Ohio Supreme Court from the state appellate court's decision. (Doc. 6, Brief, p. 6). Petitioner states that he did not perfect an appeal to the state supreme court because he was not informed of the Ohio Court of Appeals' decision until after the 45-day period for filing a timely appeal to the Ohio Supreme Court had expired. (Doc. 9, pp. 30-31).

**Federal Habeas Corpus**

The instant federal habeas corpus petition was filed on April 8, 2010. (Doc. 1).[4]

Petitioner alleges four grounds for relief:

> **Ground One:** Petitioner is entitled to be discharged on a writ of habeas corpus on grounds that the Fourth and Fourteenth Amendments of the U.S. Constitution [were] violated.
>
> **Supporting Facts:** The Fourth Amendment, as made applicable [to] the state(s), through the application of the 14th Amendment, was violated in this case. The issuing magistrate judge lacked probable cause to issue the warrant. Petitioner states that the warrant was not based on probable cause and states that the "Affidavit" did not state a factual basis that the property to be seized was located in the residence that was searched and that the Affidavit did not provided a substantial basis for believing the source of the hearsay contained in the Affidavit to be credible.
>
> **Ground Two:** Petitioner is entitled to be discharged on a writ of habeas corpus on grounds that the Sixth and Fourteenth Amendments of the U.S. Constitution [were] violated.

---

[4]Petitioner avers that he executed the instant petition on December 14, 2009. (Doc. 1, p. 7). However, he also states in the petition that he "recently filed" an "application for reconsideration/reopening" with the Ohio Court of Appeals, Fourth Appellate District. (Doc. 1, p. 4). Because the application referred to in the petition was filed with the state appellate court on February 8, 2010, two months *after* petitioner claims he signed the petition, the undersigned gives no weight to the signing date provided by petitioner.

**Supporting Facts:** At the suppression hearing, defense counsel was ineffective, by preventing the petitioner from obtaining witnesses to testify at the suppression hearing. Additionally, defense counsel was ineffective by failing to include a claim that attacked "false statements" made in the search warrant, and by failing to raise a claim that the issuing magistrate judge was not detached and neutral, that issued the search warrant. Petitioner states that he did not receive a full and fair suppression hearing in state court. Petitioner further states that his appellate counsel on direct appeal was ineffective for failing to raise these claims on direct appeal.

**Ground Three:** Petitioner is entitled to a discharge on a writ of habeas corpus on grounds that the state court findings are contrary to existing Supreme Court preceden[ts].

**Supporting Facts:** Under the newly enacted Antiterrorism and Effective Death Penalty Act of 1996, [] a showing [is required] that the state court findings are unreasonable in light of the existing U.S. Supreme Court preceden[ts]. Petitioner states that the state court findings are: (1) unreasonable in light of the evidence presented; and (2) petitioner states that the state courts['] "legal conclus[]ions," are contrary to the existing Supreme Court cases.

**Ground Four:** Petitioner's 4th, Fifth, Sixth, Eighth and Fourteenth Amendment rights were violated, as a result of the state court's failure to provide an adequate hearing.

**Supporting Facts:** At petitioner's suppression hearing, and as a result of the appellate court process from such state court hearing, violated the petitioner's right to: (1) a meaning[ful] suppression hearing; as well as [a] meaningful appeal from such a hearing; secondly, counsel on appeal failed to chal[l]enge the adequacy of the state court proceedings; accordingly, petitioner['s] rights were violated, entitling petitioner to a habeas corpus hearing.

(Doc. 1, pp. 5-6).

## II. OPINION

### A. The Claims In Grounds One And Three, Challenging The Denial Of Petitioner's Suppression Motion And The State Court's Adjudication Of Petitioner's Fourth Amendment Claim, Are Barred From Review In This Habeas Proceeding

In Ground One of the petition, petitioner alleges that he is entitled to habeas corpus relief

because the trial court erred in refusing to suppress evidence that was seized pursuant to a search

warrant issued without probable cause, in violation of his Fourth Amendment right to be free from unreasonable searches and seizures. (*See* Doc. 1, p. 5). In Ground Three, he claims he is entitled to relief because under the applicable standard of review set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, the state trial and appellate court decisions upholding the validity of the search warrant (*see* Doc. 6, Exs. 8, 18) are contrary to and involve an unreasonable application of the relevant Supreme Court precedents. (Doc. 1, p. 6). In the return of writ filed in response to the petition, respondent contends that the Supreme Court's decision in *Stone v. Powell,* 428 U.S. 465 (1976), precludes federal habeas review of petitioner's claims stemming from the denial of his suppression motion and the state courts' adjudication of the Fourth Amendment issues raised in that motion. (Doc. 6, Brief, pp. 9-12).

As respondent has argued, the Supreme Court held in *Stone* that federal habeas courts are prohibited from addressing the merits of Fourth Amendment claims brought by state prisoners if the prisoner had a full and fair opportunity to litigate such a claim in the state courts and the presentation of the claim was not thwarted by any failure of the State's corrective process. *Stone*, 428 U.S. at 494-95. The Sixth Circuit has developed a two-step inquiry in assessing whether *Stone* applies to preclude federal habeas review of Fourth Amendment claims. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982); *see also Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir. 2000). Under that inquiry, the federal habeas corpus court must determine (1) whether the State has provided a procedural mechanism through which, in the abstract, the petitioner could raise a Fourth Amendment claim, and (2) whether the petitioner's presentation of the Fourth Amendment claim was in fact frustrated because of a failure of that mechanism. *Id.*

9

In *Riley,* the Sixth Circuit held that by providing for the filing of a pretrial motion to suppress and the opportunity to directly appeal any ruling denying a suppression motion, Ohio has a mechanism in place for the resolution of Fourth Amendment claims, which "is, in the abstract, clearly adequate." *Riley,* 674 F.2d at 526; *see also Loza v. Mitchell,* 705 F. Supp.2d 773, 860 (S.D. Ohio 2010). Therefore, the determination whether *Stone* applies turns solely on the resolution of the second *Riley* inquiry. *See Hillman v. Beightler,* No. 5:09cv2538, 2010 WL 2232635, at *5 (N.D. Ohio May 26, 2010) (O'Malley, J.).

In Ground Three of the petition, petitioner essentially contends that no inquiry under the second *Riley* step is required. He asserts that his Fourth Amendment claim is now subject to review under the AEDPA's revised standards of review set forth in 28 U.S.C. § 2254(d), which mandate the granting of habeas relief based on a showing that the state courts' adjudication of the underlying constitutional claim is contrary to or involves an unreasonable application of clearly established federal law as determined by the United States Supreme Court. However, Congress did not override *Stone* in enacting the AEDPA amendments to § 2254(d); instead, "*Stone* is based on an interpretation of § 2254(a) that treats inaccurate administration of the [Fourth Amendment's] exclusionary rule as outside the scope of that statute." *Hillman v. Beightler,* No. 5:09cv2538, 2010 WL 2232640, at *2 (N.D. Ohio Apr. 19, 2010) (Gallas, M.J.) (quoting *Cabrera v. Hinsley,* 324 F.3d 527, 530 (7th Cir. 2003), in turn quoting *Hampton v. Wyant,* 296 F.3d 560, 563 (7th Cir. 2002)), *adopted,* 2010 WL 2232635, at *4-5 (N.D. Ohio May 26, 2010) (O'Malley, J.).

*Stone* and *Riley*, therefore, remain in effect and still apply to bar review of fully and fairly litigated Fourth Amendment claims raised on federal collateral review. *Blevins v. Rogers,* No.

10

3:08cv2504, 2010 WL 649097, at \*2 (N.D. Ohio Feb. 19, 2010); *cf. Loza,* 705 F. Supp.2d at 859-

60.  As a district judge from the Northern District of Ohio has explained:

> Fourth Amendment claims are given different treatment than other constitutional
> claims in habeas proceedings because the primary purpose of excluding evidence
> that was obtained through illegal search or seizure is deterrence of unlawful police
> behavior. *Stone,* 428 U.S. at 483.  Because further review of police behavior in
> federal courts, after full litigation in state court, would do little to advance the
> rule's preventative purpose, the Constitution does not require habeas review of
> Fourth Amendment claims. *Id.*  Therefore, fully and fairly litigated Fourth
> Amendment claims may not be asserted in petitions for habeas corpus under the
> AEDPA because being held in custody despite these claims does not violate the
> Constitution. *Id.* at 494.
>
> Though Petitioner correctly points out that *Stone* predates the AEDPA, analysis
> under both sources of law is not inconsistent. *See Machacek*[, 213 F.3d at 952-
> 54] . . . (applying *Stone* to a Fourth Amendment claim of illegal arrest, while
> proceeding further into the AEDPA analysis to apply § 2254(d)(1)-(2) to claims of
> violations of the right to counsel and *Miranda* warnings).  The established federal
> law articulated in *Stone* addresses the most basic requirement for federal habeas
> corpus jurisdiction under the AEDPA: custody in violation of federal law.  28
> U.S.C. § 2254(a).  If, because of *Stone,* Fourth Amendment claims fail to render
> an individual's custody in violation of federal law, analysis under the AEDPA
> need not proceed further to address the requirements of § 2254(d)(1)-(2).  In
> contrast to Petitioner's assertion that enforcing *Stone* relegates the AEDPA to
> secondary status, *Stone* gives meaning to the most basic requirement of the
> AEDPA.

*Smith v. Bradshaw,* No. 5:04cv1235, 2006 WL 2233211, at \*4 (N.D. Ohio Aug. 3, 2006)

(Adams, J.).

Indeed, contrary to petitioner's contention, both before and after the AEDPA's enactment,

courts have consistently held that the "relevant inquiry" in resolving the second question posed in

*Riley* is whether the "habeas petitioner had an opportunity to litigate his claims, not whether he in

fact did so or even whether the Fourth Amendment claim was correctly decided" by the state

courts. *Wynne v. Renico,* 279 F. Supp.2d 866, 892 (E.D. Mich. 2003) (citing *Ortiz-Sandoval v.*

11

*Gomez,* 81 F.3d 891, 899 (9th Cir. 1996)).[5]

> As long as a state prisoner has had an opportunity to litigate his Fourth
> Amendment claims by means of procedures that are "suitably crafted" to test for
> possible Fourth Amendment violations, a federal habeas court does not have the
> power, under *Stone,* to "second-guess the accuracy of the state courts'" resolution
> of those claims.". . . Thus, a "mistaken outcome" of a suppression hearing that
> has been conducted in a state trial court, standing alone, does not deny a habeas
> petitioner's opportunity to fully and fairly litigate his Fourth Amendment
> claims.... Thus, even "potentially meritorious Fourth Amendment claims" are
> barred by *Stone* on habeas review if the petitioner had a full and fair opportunity
> to litigate his claims in the state courts.

*Id.* (quoting *Sanna v. Dipaolo,* 265 F.3d 1, 8-9 (1st Cir. 2001), and *Deputy v. Taylor,* 19 F.3d

1485, 1491 (3rd Cir. 1994)); *see also Hillman, supra,* 2010 WL 2232635, at *5 (quoting the

following excerpt from *Cabrera,* 324 F.3d at 531-32: "Absent a subversion of the hearing

process, we will not examine whether the judge got the decision right. . . . '[F]ull and fair'

guarantees the right to present one's case, but it does not guarantee a correct result."); *Brown v.*

*Berghuis*, 638 F. Supp.2d 795, 812 (E.D. Mich. 2009) (and cases cited therein) ("Under *Stone,*

. . . the correctness of the of the state courts' conclusions is simply irrelevant.").

The Sixth Circuit has stated that the second *Riley* inquiry is "not meant to be a case by

case review of state court determinations," but rather "is a review of whether the state provided

an adequate mechanism to address Petitioner's Fourth Amendment claims." *Abdul-Mateen v.*

---

[5]The district court later supplemented its opinion in *Wynne* on another issue, which was determined to be
sufficiently meritorious to justify the granting of a conditional writ of habeas corpus. *See Wynne v. Renico,* 595 F.
Supp.2d 775 (E.D. Mich. 2009). Thereafter, the Sixth Circuit reversed the district court's revised judgment granting
habeas corpus relief based on that other ground; the Supreme Court recently denied certiorari review of the Sixth
Circuit's decision. *Wynne v. Renico,* 606 F.3d 867 (6th Cir. 2010), *cert. denied,* __ S.Ct. __, 2011 WL 1631061 (U.S.
May 2, 2011) (No. 10-865, 10A372).

*Hofbauer,* No. 98-2323, 2000 WL 687653, at \*3 (6th Cir. May 19, 2000).[6]  Petitioner has argued

in Grounds Two and Four of the petition and in his "traverse" brief that he was denied an

adequate opportunity for a full and fair hearing in the state courts on his Fourth Amendment

claim due to his trial and appellate counsels' ineffectiveness and the State's failure to disclose the

identity of the confidential informant.  (*See* Doc. 1, pp. 5-6; Doc. 9, pp. 21-26).  Petitioner's

arguments, however, do not establish that there was a failure of the State's procedural

mechanism which frustrated the presentation of his Fourth Amendment claim in the Ohio courts.

Specifically, petitioner contends that he was precluded from receiving a full and fair

hearing in the state courts based on counsels' ineffectiveness because his trial and appellate

attorneys failed to present certain additional, important testimony and arguments in support of his

claim of a Fourth Amendment violation.  The Supreme Court held in *Kimmelman v. Morrison,*

477 U.S. 365 (1986), that *Stone* does not extend to preclude habeas review of Sixth Amendment

ineffective assistance of counsel claims stemming from counsel's failure to adequately litigate

Fourth Amendment claims in the state courts.  However, *Kimmelman* cannot be relied on to

---

[6]In *Riley,* the Sixth Circuit suggested that an "egregious error in the application of fourth amendment principles," amounting to a refusal to consider or apply controlling Supreme Court precedents, "might" justify a federal habeas court "in concluding that an opportunity for a full and fair hearing had not been afforded the petitioner." *Riley,* 674 F.2d at 526 (citing *Gamble v. Oklahoma,* 583 F.2d 1161 (10th Cir. 1978)).  In a subsequent decision, the Sixth Circuit rejected a petitioner's argument that an egregious misapplication of a controlling Supreme Court precedent also could justify such a conclusion, as had been reached in *Gamble.  Gilbert v. Parke,* 763 F.2d 821, 824 (6th Cir. 1985).  The court reasoned: "This court in *Riley* declined to adopt the portion of *Gamble* permitting federal review of egregious substantive errors committed by state courts on Fourth Amendment claims.... Since the [state] courts provided Gilbert a full and fair opportunity to litigate his Fourth Amendment claims, second-guessing the [state] Supreme Court on the merits would be inconsistent with *Stone.*"  *Id.*  Here, as in *Gilbert,* the record does not reflect the magnitude or type of "egregious error" referred to in *Riley* as possibly justifying a finding that the opportunity for a full and fair hearing had been thwarted.  *Cf. Bergholz v. McMackin,* No. 89-3740, 1990 WL 223036, at \*3 (6th Cir. Dec. 27, 1990) (per curiam) (in ruling that *Stone* foreclosed the petitioner's Fourth Amendment claim, the Sixth Circuit pointed out that "even if the state courts were in error in applying substantive law regarding 'seizures' under the Fourth Amendment, the state courts did not refuse to follow applicable precedent").

avoid the *Stone* bar with respect to the underlying Fourth Amendment claim, standing alone.  As

the Sixth Circuit reasoned in rejecting a similar argument asserted by a petitioner, who

analogized his case to *Kimmelman* in an attempt to obtain review of a related constitutional issue

that he had failed to present in support of his suppression motion in the state courts:

> *Kimmelman* cannot be read so broadly . . . to mean that a Fourth Amendment
> issue fully litigated in state courts can be raised and relitigated in a federal habeas
> proceeding whenever there are other related constitutional violations alleged.  In
> *Kimmelman* it was necessary to consider the merits of the unasserted Fourth
> Amendment claim in order to resolve the petitioner's Sixth Amendment claim.  In
> the present case the Fourth Amendment claim was fully litigated in the state court
> and the mere fact that petitioner also asserts additional constitutional violations
> arising from the alleged seizure does not remove this case from the mandates of
> *Stone v. Powell.*

*Bergholz v. McMackin*, No. 89-3740, 1990 WL 223036, at *4 (6th Cir. Dec. 27, 1990) (per

curiam).  In any event, as discussed below in addressing the ineffective assistance of counsel

claims alleged in Grounds Two and Four of the petition, petitioner procedurally defaulted those

claims in the state courts and thus has waived any argument that the underlying Fourth

Amendment issue is subject to review based on such claims.  *See infra* pp. 17-24.

Finally, the record does not support petitioner's contention that he was not afforded a full

and fair hearing on his Fourth Amendment claim because the identity of the confidential

informant, who had provided the "current" information regarding petitioner's activities at 1910

Kinney's Lane to Portsmouth Police Officer Steven Timberlake, was not disclosed to the

defense.  Indeed, on the contrary, it appears that petitioner received full and fair consideration by

the state courts of all arguments and requests asserted in his suppression motion, including his

request for the issuance of an order requiring the disclosure of the informant's identity.  (*See*

Doc. 6, Ex. 3, p. 2).

14

Before ruling on petitioner's suppression motion, the trial court held a hearing on June 16, 2006, where defense counsel was afforded the opportunity to call witnesses and submit evidence in support of the motion. (*See* Doc. 11). At the hearing, defense counsel expressed knowledge of the informant's identity; questioned Officer Timberlake regarding the possibility that the suggested informant had an ulterior motive to provide false information to the police because he was involved in a "love triangle" and had been "scorned" by "Katie Lansing," the woman who resided at 1910 Kinney's Lane; and otherwise sought to elicit testimony from Officer Timberlake casting further doubt on the informant's reliability. (Doc. 11, Tr. 11-15).

After the hearing, the parties were permitted to submit additional briefs supporting their positions. (Doc. 6, Exs. 5-7). Thereafter, in denying petitioner's suppression motion, the trial court expressly considered and addressed petitioner's request for disclosure of the informant's identity, as well as the arguments asserted in support of his claim of a Fourth Amendment violation. The court refused petitioner's request for disclosure of the informant's identity because the informant was not "actively involved in setting up the [trafficking] offense or present at the offense" and "only provided information concerning the offense after witnessing criminal conduct." (Doc. 6, Ex. 8, p. 7). The court also specifically addressed petitioner's allegations that the informant was involved in a "love triangle" with the woman residing at 1910 Kinney's Lane and thus had "ulterior motives" to give "false information" to the police and to even plant false evidence implicating petitioner in the charged drug offenses. (*See* Doc. 6, Ex. 5, p. 23; Ex. 8, p. 7). The court stated that "[i]f the Defendant could prove these facts, he would have a strong defense," but that disclosure of the informant's identity was not necessary because "the Defendant can still assert in his defense that the seized drugs were placed in the residence by

15

someone engaged in a love triangle with Katherine Lansing and that the informant had ulterior motives." (Doc. 6, Ex. 8, p. 7).

After he entered his no contest plea, petitioner was able to challenge the trial court's decision on direct appeal to the Ohio Court of Appeals and Ohio Supreme Court. (*See* Doc. 6, Exs. 11-21). The Ohio Court of Appeals carefully considered and rejected the assignment of error raised on appeal, finding that "after we consider Officer Timberlake's affidavit as a whole, we conclude, as did the trial court, that a sufficient showing of probable cause existed for a search warrant to issue." (Doc. 6, Ex. 18, p. 6). In so ruling, the court reasoned that although "it would have been better if Officer Timberlake had spoken to the reliability of the informant(s) in this case," the "appellant's lengthy drug trafficking background, the informant's information that appellant was in town and driving a 'silver car,' the drug hotline tip (that did not mention appellant) that reported a silver car outside a home on Kinney's Lane which had a great deal of traffic entering and leaving the residence, and the informant's observation that appellant possessed 'crack cocaine' at 1910 Kinney's Lane provided sufficient probable cause for the magistrate to issue the search warrant." (Doc. 6, Ex. 18, pp. 7-8). Moreover, the Ohio Supreme Court denied petitioner leave to appeal and dismissed the appeal, apparently because it was not persuaded by petitioner's memorandum in support of jurisdiction that the claim merited further consideration. (Doc. 6, Ex. 21).

Accordingly, in sum, the undersigned concludes that the claims alleged in Grounds One and Three of the petition, challenging the denial of petitioner's suppression motion and the state courts' adjudication of his Fourth Amendment claim, are barred from review under the Supreme Court's *Stone* decision. Federal habeas review of Grounds One and Three is prohibited because

16

petitioner was provided a full and fair opportunity in the state courts to litigate his claim

challenging the constitutionality of the search warrant that was issued in this case, and the record

does not support his contention that he was thwarted in the presentation of that claim by any

failure of the State's corrective process. *Cf. Stone*, 428 U.S. at 494-95.

**B. Petitioner Procedurally Defaulted And Has Waived The Claims Alleged In Grounds Two And Four Challenging The Adequacy Of Petitioner's Suppression Hearing And Appeal Based On The Ineffectiveness Of His Trial And Appellate Attorneys**

In Grounds Two and Four of the petition, petitioner alleges that he is entitled to relief

because "he did not receive a full and fair suppression hearing" and was denied a "meaningful

appeal" due to the ineffectiveness of his trial and appellate attorneys, who failed to "obtain[]

witnesses to testify at the suppression hearing" and failed to raise certain arguments challenging

the validity of the search warrant and the adequacy of the suppression hearing held in this case.

(Doc. 1, pp. 5-6). Respondent contends in the return of writ that petitioner procedurally

defaulted and has waived these claims, which were raised by petitioner in his application for

reconsideration and reopening of the appeal that was dismissed by the Ohio Court of Appeals on

the ground that it was untimely filed. (Doc. 6, Brief, pp. 17-19 & Exs. 22-23). Respondent's

argument has merit.

In recognition of the equal obligation of the state courts to protect the constitutional rights

of criminal defendants, and in order to prevent needless friction between the state and federal

courts, a state defendant with federal constitutional claims must fairly present those claims to the

state courts for consideration before raising them in a federal habeas corpus action. *See* 28

U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard*

*v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to

the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the federal habeas court may be barred from considering an issue of federal law from a judgment of a state court if the judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See Harris v. Reed,* 489 U.S. 255, 260-62 (1989). The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something to

18

preserve the issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982);

*Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

> The Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:

> (1) the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138

(6th Cir. 1986)).

In the usual case, the adequate and independent state ground doctrine will not apply to bar

consideration of a federal claim on habeas corpus review unless the last state court rendering a

judgment in the case "clearly and expressly" states that its judgment rests on a state procedural

bar. *Harris,* 489 U.S. at 263; *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).[7]  In

cases where the last state court to render a reasoned opinion explicitly relies on a procedural bar,

the court will presume that a later unexplained order did not silently disregard the procedural

default and consider the merits of the claim. *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991).

In addition, the rule precluding federal habeas corpus review of claims rejected by the

---

[7]In *Harris,* the Supreme Court noted that the rule requiring that the state court plainly state that its judgment rests on a state procedural default "applies only when a state court has been presented with the federal claim" raised by the state prisoner as a ground for federal habeas relief. *Harris,* 489 U.S. at 263 n.9; *see also Teague v. Lane*, 489 U.S. 288, 299 (1989) (plurality opinion) ("The rule announced in *Harris* . . . assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). The *Harris* Court further noted: "Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Harris,* 489 U.S. at 263 n.9.

state courts on state procedural grounds applies only in cases where the state rule relied on by the courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th Cir. 2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (per curiam); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992); *see also Rideau v. Russell,* 342 F. App'x 998, 1002 (6th Cir. 2009). To be considered regularly followed, a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410 n.6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000).

Finally, the state court's adequate and independent finding of procedural default will preclude habeas corpus review of the petitioner's federal claims unless the petitioner can show "cause" for the default and "prejudice" as a result of the alleged violations of federal law, or that failure to consider the federal claims will result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262; *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, petitioner committed numerous procedural defaults. First, he did not allege any claim on direct appeal challenging the adequacy of the suppression hearing or his trial counsel's representation at that hearing. Second, although petitioner did raise the claims alleged in Grounds Two and Four in his application for reconsideration and reopening of the appeal, he committed a procedural default by failing to file a timely application with the Ohio Court of Appeals, which was relied on by that court in denying the application. Finally, petitioner

20

committed a third procedural default because he did not perfect a timely appeal to the Ohio

Supreme Court from the appellate court's decision in the reconsideration/reopening matter.

Petitioner has argued that his appellate counsel was ineffective in failing to raise claims

on direct appeal challenging the adequacy of the suppression hearing and trial counsel's

representation at that hearing. Ineffective assistance of counsel may constitute cause for a

procedural default. *See, e.g., Murray,* 477 U.S. at 488. However, in order to establish cause

based on that argument, the ineffective assistance of counsel claim itself must not be

procedurally defaulted. *See Edwards v. Carpenter,* 529 U.S. 446, 452 (2000); *Landrum v.*

*Mitchell,* 625 F.3d 905, 934 (6th Cir. 2010), *petition for cert. filed,* __ U.S.L.W. __ (U.S. Apr. 4,

2011) (No. 10-9911).

Here, petitioner procedurally defaulted any ineffective assistance of appellate counsel

claim, either for the purpose of establishing "cause" for his default of claims that could have

been, but were not, raised on direct appeal or as an independent ground for relief, because (1) he

did not file a timely application for reconsideration and reopening with the Ohio Court of

Appeals, and the state appellate court relied on that state procedural ground in denying the

application; and (2) he failed to perfect a timely appeal to the Ohio Supreme Court from the

appellate court's decision in that matter.

As the Ohio Court of Appeals pointed out in its entry denying petitioner's application

(*see* Doc. 6, Ex. 23), an application for reconsideration under Ohio R. App. P. 26(A) must be

filed, at the latest, "within ten days of the announcement of the court's decision," and a reopening

application under Ohio R. App. P. 26(B) must be filed "within ninety days from journalization of

the appellate judgment unless the applicant shows good cause for filing at a later time." Here, as

the Ohio Court of Appeals found, it is clear that petitioner failed to comply with the time requirements set forth in Ohio R. App. P. 26 when he belatedly filed his application on February 8, 2010, over a year and four months after the journalization of the Ohio Court of Appeals' September 26, 2008 decision affirming the trial court's judgment. (*See* Doc. 6, Exs. 18, 22).

The Ohio Court of Appeals was the only state court to issue a decision in the reconsideration/reopening matter. The court actually enforced the state procedural bar by clearly and expressly stating as the sole ground for its decision that the application was untimely under both Ohio R. App. P. 26(A) and Ohio R. App. P. 26(B), and that petitioner had not demonstrated the bar to review should be excused in his case. (Doc. 6, Ex. 23).

The state appellate court relied on independent and adequate state procedural grounds in denying petitioner's application. It was well-established even before the enactment of Ohio R. App. P. 26(B) in 1993 that applications for reconsideration filed after the requisite ten-day period set forth in Ohio R. App. P. 26(A) were subject to dismissal absent a showing under Ohio R. App. P. 14(B) of good cause sufficient to excuse the untimely filing. *See, e.g., Jamison v. Collins*, 100 F. Supp.2d 521, 590-91 (S.D. Ohio 1998) (discussing the rules, which were in effect at the time the Ohio Supreme Court decided in *State v. Murnahan,* 584 N.E.2d 1204 (Ohio 1992), that ineffective assistance of appellate counsel claims should be raised in motions for reconsideration in the court of appeals as opposed to post-conviction petitions addressed to the trial court). Moreover, it also now well-settled that the 90-day filing deadline and "good cause" requirement set forth in the subsequent Ohio R. App. P. 26(B) rule pertaining to reopening applications were "firmly established" and "regularly followed" by the time they were applied in this case. *See Monzo v. Edwards,* 281 F.3d 568, 577 (6th Cir. 2002); *see also Landrum,* 625 F.3d

22

at 934; *Hoffner v. Bradshaw,* 622 F.3d 487, 504 (6th Cir. 2009), *cert. denied,* __ S.Ct. __, 2011 WL 743055 (U.S. Apr. 18, 2011) (No. 10-9276).

Because petitioner thus procedurally defaulted the claims alleged in Grounds Two and Four, he has waived the two grounds for relief absent a showing of cause and prejudice for his defaults in the state courts, or that a fundamental miscarriage of justice will occur if the claims are not considered herein. *See, e.g., Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262. No such showing has been made in this case.

Petitioner has not demonstrated that failure to consider the claims alleged in Grounds Two and Four will result in a "fundamental miscarriage of justice," or in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995). Nor has petitioner established cause sufficient to excuse his procedural defaults in the state courts. As discussed above, petitioner is unable to rely on his procedurally-defaulted ineffective assistance of appellate counsel claim as cause for his procedural default of the trial-error claims alleged in Grounds Two and Four. Moreover, although petitioner has argued that cause exists for his failure to perfect a timely appeal to the Ohio Supreme Court from the denial of his application for reconsideration and reopening (*see* Doc. 9, pp. 30-31), he has not provided any explanation for his significant delay in seeking the reconsideration and reopening of his appeal in the Ohio Court of Appeals.

Accordingly, in sum, in the absence of an adequate showing of cause for petitioner's procedural defaults in the state courts or that a fundamental miscarriage of justice will occur if the defaulted claims are not considered herein, the Court concludes that petitioner has waived the claims in Grounds Two and Four of the petition essentially alleging that "he did not receive a full

23

and fair suppression hearing" and was denied a "meaningful appeal" due to the ineffectiveness of his trial and appellate attorneys. The defaulted claims, therefore, should be dismissed with prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims in Grounds Two and Four of the petition, which this Court has concluded are waived and thus procedurally barred from review. Under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural ruling.[8]

A certificate of appealability also should not issue with respect to the Fourth Amendment claims alleged in Grounds One and Three of the petition, because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented in those grounds for relief "adequate to deserve encouragement to proceed further." *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should

---

[8]Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in the defaulted grounds for relief. *See Slack,* 529 U.S. at 484.

**DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See*

Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 5/31/2011

cbc

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JAMES L. SHEPHERD,
    Petitioner,

    vs

WARDEN, PICKAWAY CORRECTIONAL
INSTITUTION,
    Respondent.

Case No. 1:10-cv-222

Dlott, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

James L. Shepard 528-603
Pickaway Corr. Inst.
Po Box 209
Orient, OH 43146

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☑ Agent
                           ☐ Addressee

B. Received by ( Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☑ Certified Mail      ☐ Express Mail
   ☐ Registered         ☐ Return Receipt for Merchandise
   ☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)            ☐ Yes

2. Article Number
   (Transfer from service label)    7001 2510 0008 6348 6991

PS Form 3811, August 2001        Domestic Return Receipt        102595-02-M-1540